IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON D. BRADLEY, SR., a.k.a.
BRITTNEY HARDAWAY BRADLEY,

                Plaintiff,

    v.                                                            OPINION and ORDER

DAVID MAHONEY, TOUA VUE,
BEN JENNINGS, MARTIN KNOLL, JACOB ZILLI,                              20-cv-50-jdp
DERRICK WALKER, TIM ALGIERS, MATT EARLL,
DRITTAN LAZAMI, FRANK SMILGIS,
BERNARD BAKER, and JOHN KLEIN,

                Defendants.

---

      Pro se plaintiff Brandon Bradley, also known as Brittney Bradley, is currently a prisoner at Green Bay Correctional Institution.[1] When Bradley was a prisoner at the Dane County Jail, she was taken to the hospital for kidney surgery. She contends that sheriff's office staff mistreated her by keeping her in restraints the entire time she spent at the hospital recovering from that surgery. I granted Bradley leave to proceed on claims under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

      The parties have filed cross-motions for summary judgment and a series of other motions on preliminary issues. I will resolve the preliminary motions and I will deny Bradley's motion for summary judgment because the parties' submissions show that she is not entitled to judgment as a matter of law. But I will reserve a ruling on defendants' motion for summary

---

[1] Bradley is a transgender woman. *See Bradley v. Novak*, No. 20-cv-48-jdp (W.D. Wis.). In keeping with the court's practice in previous cases, I will use feminine pronouns to refer to Bradley.

judgment to obtain supplemental materials that the court needs to determine whether a trial is necessary.

PRELIMINARY MATTERS

**A.  Motions about retaliation and access to the courts**

I begin with some preliminary motions.

Bradley filed a motion in both this case and another of her cases in this court, No. 20-cv-49-jdp, asking the court to intervene in her treatment by jail staff: she states that staff retaliated against her pursuing this lawsuit by ending her legal loan, blocking her outgoing mail, and placing her in solitary confinement. Dkt. 90. She also argues that there is no legal basis to transfer her to DOC custody and she asks for a federal criminal investigation to be opened into both jail and DOC staff's misconduct against her. *Id.*

I already denied this motion in the '49 case because Bradley's claims of retaliation were not part of her active lawsuits, she failed to show that jail officials blocked her access to this court and she has been transferred to DOC custody, I could not consider the lawfulness of her confinement in this civil rights lawsuit, and this court does not initiate investigations in criminal matters. *Bradley v. Norman*, No. 20-cv-49-jdp, 2022 WL 594542, at *1 (W.D. Wis. Feb. 28, 2022). For the same reasons, I will deny Bradley's motion in this case.

**B.  Motion to seal**

As in the '49 case, defendants have submitted Bradley's unredacted medical records, along with a motion for leave to file those records under seal under Federal Rule of Civil Procedure 5.2(d). Dkt. 101. I stated in the summary judgment order in the '49 case that this wasn't the proper way to submit medical records relevant to the case, which belong on the

public record. *Bradley*, No. 20-cv-49-jdp, 2022 WL 594542, at *2. Nonetheless, I won't unseal the current version of the records. Under Rule 5.2(a), defendants were required to redact certain personal identifiers of Bradley's, but they did not. I will keep the current version of those documents under seal, but I will order defendants to file new, redacted copies of those documents for the public record.

## C. Motion to compel discovery

Bradley has filed a motion to compel discovery of various materials both in this case and the '49 case. Dkt. 92. I ruled on an identical copy of this motion in the '49 case regarding the materials she sought that were relevant to that lawsuit. I agreed with defendants that it was inappropriate for Bradley to file discovery requests mixing requests from two cases together, and I denied the motion on the merits because defendants had already provided Bradley with the materials she sought in the '49 case. *See* Dkt. 143 in the '49 case, at 3. *Id.*

The pertinent information that Bradley seeks in this case includes hospital logs from her post-surgery time there and responses to her interrogatories. Defendants state that they have already provided Bradley with those documents. In her reply, Bradley seems to agree: she doesn't mention the interrogatory responses and she states that her copy of the hospital logs that she received were later taken by jail staff. I will deny Bradley's motion to compel because defendants did provide Bradley with the information she sought.

But Bradley's allegations that jail staff took her copy of the hospital logs raises the concern that she has not been able to file a full response to defendants' motion for summary judgment. In her response to defendants' motion for summary judgment, Bradley says that the logs would show that she repeatedly complained of pain to nurses and defendants, and that she made no threats or "engaged in any misbehavior." Dkt. 111, at 3. Defendants say that the

logs do not show that Bradley complained of pain from the restraints and that medical staff did not at any point conclude that the restraints were too tight. Defendants cite to several points in those records specifically stating that Bradley did not complain about her restraints when she was checked by hospital staff. But the hospital records are voluminous and it is not this court's task to sift through the entirety of them to confirm defendants' assertion that Bradley never complained about the restraints. In light of Bradley's allegations that jail staff took her copies of the hospital logs, I will direct the clerk of court to send Bradley another copy of those records and I will give Bradley a short time to file a supplemental response to defendants' motion for summary judgment limited to indicating what in those medical records supports her claim.

## BRADLEY'S MOTION FOR SUMMARY JUDGMENT

Nonetheless, even without additional facts from Bradley regarding the hospital logs, it is clear from the parties' submissions that Bradley is not entitled to judgment in her favor as a matter of law, so I will deny her motion for summary judgment. Dkt. 59.

I granted Bradley leave to proceed on claims under the Fourteenth Amendment's Due Process Clause against jail staff for their use of restraints on Bradley while she was in the hospital recovering from her kidney-removal surgery on September 26, 2017. The medical records show that surgeons planned to remove the part of one of Bradley's kidneys with a tumor. But closer inspection of the kidney after surgery started showed that the tumor had spread enough for surgeons to conclude that the entire kidney would have to be removed.

Bradley recovered at the hospital until September 29. Bradley awoke from surgery to find herself in four-point restraints. Deputies kept her restrained the entire time, even when

she ate, used the restroom, bathed, or walked the hospital floor. Neither party explains the exact method of restraint they used during these times.

The Due Process Clause protects pretrial detainees like Bradley from the use of objectively unreasonable force, which includes the use of unreasonably painful restraints. *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015); *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (excessive force may include application of painful restraints). Courts have concluded that "[t]he use of bodily restraints on a pretrial detainee amounts to unconstitutional punishment if their use is not rationally related to a legitimate non-punitive government purpose" and that shackling an inmate in the less-secure hospital setting could violate the Constitution. *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) ("[I]t is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, is an appropriate policy for carrying out [a reasonable security] purpose."); *Terry v. Cnty. of Milwaukee*, 357 F. Supp. 3d 732, 755–56 (E.D. Wis. 2019) (policy mandating all hospitalized inmates be shackled could violate Fourteenth Amendment as applied to inmate during and after childbirth who was also lethargic from heroin and going through withdrawal).

In *May*, the Court of Appeals for the Seventh Circuit stated that a policy of shackling hospitalized inmates would be "plainly excessive in the absence of any indication that the detainee poses some sort of security risk." 226 F.3d at 884. But here, there is ample evidence showing that Bradley was a security risk. Defendants say that they consider Bradley to be a particularly unpredictable and dangerous inmate, and they produce jail records showing that Bradley had a history of being disruptive, concealing shanks or other weapons, threatening to harm staff, and attempting self-harm,

In just the month before Bradley's surgery, jail records show that Bradley brandished a sharpened toothbrush at a court hearing, she received medical attention after she inserted a toothbrush shank into her rectum to prevent jail officials from finding it, and she was found with shanks at least two other times, with Bradley saying that she was "homicidal" during one incident. Dkt. 100-1, at 10. In another incident, a pat-down search revealed that Bradley had concealed a broken shower head inside a sock. Multiple times Bradley made remarks about wanting to harm deputies. After a previous trip to the hospital, Bradley stated that she had tried to take a deputy's gun, and that she would have shot the deputy with it. On several occasions Bradley threw water or objects at staff.

Bradley posed a risk to herself multiple times that month. Deputies placed her on suicide precautions after they found a piece of torn bedsheet in her cell that they believed she was going to hang herself with. In another incident, Bradley began tying ripped bed sheets in the ceiling vent. Bradley twice made comments about using a shank to cut out her kidney.

Bradley also twice flooded her cell. In another incident, Bradley yelled, "I'm gonna keep fucking this shit up until I leave! I got two years in prison! I'm gonna fuck up the dayroom, the dayroom camera, my cell camera, and I'm gonna rip the phone off the wall! I'm gonna fuck up each cell until there is no cell left!" *Id.* at 32.

Because of Bradley's recent record of behavior, Lieutenant Brian Mikula (who is not a defendant) ordered that Bradley "not . . . be let out of restraints at any time" while she was at the hospital. Dkt. 100, ¶ 6.

Given the jail records showing Bradley's lengthy history of disruptive and dangerous behavior and construing all reasonable inference from the summary judgment record in defendants' favor, a jury could conclude that defendants' use of restraints on Bradley was

reasonable because the jury could draw the inference that Bradley remained a genuine security threat even following her surgery. So I will deny her motion for summary judgment.

The record is not complete enough for me to determine whether defendants' cross-motion for summary judgment should be granted or whether there are disputed issues of material fact necessitating a trial. Put another way, at this point it is unclear whether the *only* conclusion a reasonable jury could come to is that defendants' restraints were acceptable under the Fourteenth Amendment.

This is partly because Bradley has not been given a chance to respond directly to defendants' assertion that the hospital logs fail to show that Bradley ever complained about the restraints. The other reason is that the parties do not explain specifically how Bradley was restrained during her time at the hospital. Defendants have provided next to no detail about the methods they used to restrain Bradley. Defendants do not dispute Bradley's assertion that she was placed in "four-point restraints," by which I take to mean that each of her arms and legs was tethered to the hospital bed. But it is implausible to suggest that she remained restrained this way for her entire hospital stay because she states that she ate, bathed, and walked the hospital floor.

I will give defendants a short time to provide a declaration or other evidence explaining how they restrained Bradley at the hospital, and Bradley may respond to that filing at the same time that she submits her supplement concerning her hospital records.

ORDER

IT IS ORDERED that:

1. Plaintiff Brandon D. Bradley's motion for the court to intervene in retaliation by jail staff, Dkt. 90, is DENIED.

2. Defendants' motion to file medical records under seal, Dkt. 101, is GRANTED in part. The records defendants filed will remain under seal. They may have until March 24, 2022, to file new, redacted copies of those records on the public record.

3. Plaintiff's motion to compel discovery, Dkt. 106, is DENIED.

4. The clerk of court is directed to send plaintiff a copy of her medical records from her hospital stay, Dkt. 102-1.

5. Defendants may have until March 28, 2022, to submit a supplement to their summary judgment motion concerning the methods of restraint used on plaintiff. Plaintiff may have until April 4, 2022, to submit a supplement to her summary judgment opposition regarding the methods of restraint and her hospital records.

Entered March 14, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge